UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| ALTHEA MILLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:18-CV-255 PLC |
| | ) |
| ANDREW SAUL,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Plaintiff Althea Miller seeks review of the decision of Defendant Social Security Commissioner Andrew Saul, denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act. For the reasons set forth below, the Court reverses and remands the Commissioner's decision.

**I.     Background and Procedural History**

Plaintiff, who was born in February 1969, filed applications for DIB and SSI in June 2015 alleging that, as of April 2013[2], she was disabled as a result of: seizure disorder, "stroke in 2010," anxiety disorder, bi-polar disorder, obesity, COPD, "pulled muscle in lower back," asthma, high blood pressure, and insomnia. (Tr. 103, 205-06, 209-14) The Social Security Administration (SSA) denied Plaintiff's claims in October 2015, and she filed a timely request for a hearing before an administrative law judge (ALJ). (Tr. 135-36, 145-46) The SSA granted Plaintiff's request for review and conducted a hearing in October 2017. (Tr. 38-75)

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted pursuant to Fed. R. Civ. P. 25(d).
[2] At the hearing, Plaintiff amended her alleged onset date to February 1, 2014. (Tr. 41)

1

In a decision dated January 24, 2018, the ALJ determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, from April 3, 2013, through the date of this decision." (Tr. 12-31)  Plaintiff subsequently filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review.  (Tr. 1-5, 203-04)  Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision.  Sims v. Apfel, 530 U.S. 103, 106-07 (2000).

## II.    Evidence Before the ALJ[3]

Plaintiff testified that she was forty-eight years old and had an eighth grade education.  (Tr. 49)  Plaintiff most recently worked part-time as a cashier at McDonalds in 2013.  (Id.)  Her last full-time employment was in 2012 when she worked as a packer.  (Tr. 50)

When the ALJ asked Plaintiff "the most severe thing" preventing her from working, she answered "My panic attacks….And my back….An[d] my seizures…." (Tr. 51)  Plaintiff testified that she had experienced four seizures "this month, alone" because "I don't have no medication."  (Tr. 54)  She stated, however, that "once [my doctors] got me on the right medication, it would be months – three and four months before I even had a seizure."  (Tr. 55)  Plaintiff was not able to describe her seizures or state how long they lasted.  (Tr. 54)

When the ALJ asked Plaintiff about her back, she answered, "I have a pinched nerve, and bulging discs." (Tr. 55)  She explained that her doctors had not treated her back pain because "they were trying to get the seizures under control before they even started to do anything about my back." (Id.)  However, she stated that "they were talking about doing some kind of injections … in my hip. 'Cause I was bone on bone." (Tr. 56)

---

[3] In regard to Plaintiff's medical records, the Court adopts the facts that Plaintiff set forth in her statement of material facts and that the Commissioner admitted. [ECF No. 13-1, 18-1]

2

In regard to her mental health, Plaintiff testified that, when she was on her medications, she had panic attacks "maybe twice a week," and they lasted "[u]ntil I'm back in my apartment where it's – I feel safe."  (Tr. 57)  Plaintiff explained that loud noises and "places I don't know" triggered her panic attacks, which usually occurred when she was in public.  (Tr. 58)  She stated, "I can't do crowds" and she tried to do her grocery shopping "when it's late … and there's not as many people around."  (Tr. 57)

Plaintiff affirmed that she had "anger issues" and "sometimes" felt as though she "might snap."   (Id.)    She continued to experience audio and visual hallucinations "pretty frequent[ly]….But when I take medication, it's not bad."  (Tr. 59)  Finally, Plaintiff stated that she suffered depression, which caused her to spend three to four days a week in bed.  (Tr. 60)  Plaintiff could not recall how frequently she saw her psychiatrist and social worker, but she believed it was twice a week.  (Tr. 59)  Plaintiff  testified that her drinking had decreased significantly since she "started going to therapy and dealing with my depression."

Plaintiff stated that she lived alone, and her neighbor did her housework and helped her in and out of the bathtub.   (Tr. 51, 63)  Plaintiff "used to have a home health worker .. and a nurse that came over" seven days a week, but that those services ceased when she lost her Medicaid two months earlier.  (Tr. 52)  Per her doctor's instructions, Plaintiff did not drive, cook, or bathe alone.  (Tr. 60-61)  She explained that she did not cook because "I fall asleep" while cooking, and she did not bathe by herself, "because I fall a lot.  And I go – I've went to sleep in a tub."  (Tr. 61) Plaintiff's caseworker picked her up and accompanied her to her doctor and therapy appointments.  (Tr. 58)

Plaintiff estimated that she could stand for ten to fifteen minutes at a time.[4]  (Tr. 63)  She avoided long walks because her "breath gets short," and she believed she could lift a half-gallon of milk.  (Id.)  Plaintiff stated that she slept two to three hours per night because "I'm afraid to sleep at night….I have nightmares.  I think about a lot of stuff that happened to me."  (Tr. 64-65)

A vocational expert also testified at the hearing.  (Tr. 67-75)  The ALJ asked the vocational expert to consider a hypothetical individual with Plaintiff's age, education, and past work who was able to work at the "light exertional level," with the following limitations:

> no climbing of ladders, ropes or scaffolds; occasional ramps and stairs; occasional stooping, kneeling, crouching, and crawling; frequent handling and fingering; no work at unprotected heights, around moving mechanical parts or other such hazards, including driving or operating mechanical equipment….no concentrated exposure to extreme heat, cold, dust, fumes or other pulmonary irritants.  The individual would be limited to performing simple, routine tasks, but not at a fast pace such as an assembly line; and could have occasional interaction with co-workers and the public.

(Tr. 70-71)  The vocational expert stated that this hypothetical individual could perform her past work as a packer, as well as the jobs of cafeteria attendant, dishwasher, and some "light janitorial jobs."  (Tr. 71-72)

When the ALJ modified the hypothetical question to describe an individual with the same limitations "but now at sedentary level," the vocational expert testified that the individual could not perform Plaintiff's past work, but could perform "bench assembly type jobs," such as optical goods assembler, touch-up circuit board worker, or small product assembler.  (Tr. 72-73)  However, an additional limitation to no interaction with co-workers or the public would eliminate all potential jobs.  (Tr. 73)  Likewise, if the hypothetical individual were either off task twenty

---

[4] Plaintiff did not provide an estimated length of time that she could sit.  When Plaintiff's counsel asked her long she was able to sit, she stated, "[t]his is the longest I'm sitting, but it's killing me to sit here now," and she requested a break.  (Tr. 61)

4

percent of the workday or absent more than two days per month, the individual would not be able to maintain competitive employment. (Id.)

### III. Standards for Determining Disability Under the Social Security Act

Eligibility for disability benefits under the Social Security Act ("Act") requires a claimant to demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. See 20 C.F.R. §§ 404.1520(a), 416.920. Those steps require a claimant to first show that he or she is not engaged in substantial gainful activity. Id. Second, the claimant must establish that she has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. at § 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quotation omitted). At step three, the ALJ considers whether the Plaintiff's impairment meets or equals an impairment listed in 20 C.F.R., Subpart P, Appendix 1. Id. at 404.1520(d).

Prior to step four, the Commissioner must assess the claimant's residual functional capacity (RFC), which is "the most a claimant can do despite [his or her] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). RFC is defined as "the most a claimant can do despite her limitations." Id. (citing 20 C.F.R. § 404.1545(a)(1)).

At step four, the ALJ determines whether the claimant can return to her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, she will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. McCoy, 648 F.3d at 611.

Through step four, the burden remains with the claimant to prove that he or she is disabled. Moore, 572 F.3d at 523. At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. 20 C.F.R §§ 404.1520(g), 416.920(g); Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012). If the claimant cannot make an adjustment to other work, then she will be found to be disabled. Id. at §§ 404.1520(g), 416.920(g).

**IV.    ALJ's Decision**

Applying the foregoing five-step evaluation, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since February 1, 2014, the amended alleged onset date; and (2) had the severe impairments of frontal lobe epilepsy, asthma, mild degenerative disc disease of the lumbar spine, obesity, mild carpal tunnel syndrome, anxiety, and depression. (Tr. 14) Additionally, the ALJ determined that Plaintiff had the non-severe impairments of hypertension, mild chronic obstructive sleep apnea, gastroesophageal reflux disease, and history of alcohol

6

dependence. (Tr. 15) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Id)

The ALJ reviewed Plaintiff's testimony and concluded that, while her medically determinable impairments "could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 18) In particular, the ALJ found that the evidence did not support her allegations of total disability because: the evidence "consists of numerous emergency room records and doctor visits with very few significant findings"; Plaintiff's seizure-like activity "usually resolved when she resumed medication"; Plaintiff's back and hip pain were treated conservatively; and Plaintiff was often noncompliant with her seizure and psychiatric medications. (Tr. 26-27)

After reviewing the Plaintiff's testimony and medical records, the ALJ found Plaintiff had the RFC to perform light work with the following limitations:

> She cannot climb ladders, ropes or scaffolds, and cannot climb ramps and stairs, stoop, kneel, crouch or crawl[] more than occasionally. The claimant can frequently handle and finger. The claimant cannot work at unprotected heights or around moving mechanical parts of other hazards, including driving or operating mechanical equipment. The claimant cannot have concentrated exposure to extreme heat, cold, dust, fumes or other pulmonary irritants. The claimant would be limited to performing simple routine tasks but not at a fast pace such as an assembly line, and no more than occasional interaction with co-workers and the public.

(Tr. 17) Based on the vocational expert's testimony, the ALJ determined that Plaintiff was unable to perform any past relevant work, but she could perform the jobs of dining or cafeteria attendant, dishwasher, or janitor. (Tr. 29-30) The ALJ therefore concluded that Plaintiff was not disabled. (Tr. 31)

**V.     Discussion**

Plaintiff claims the ALJ erred in determining her RFC because the ALJ failed to properly evaluate (1) the medical opinion of Plaintiff's treating psychiatrist; and (2) the credibility of Plaintiff's subjective complaints.  [ECF No. 13]  In response, the Commissioner asserts that substantial evidence supported the ALJ's evaluation of the medical opinion evidence and Plaintiff's allegations of disability.  [ECF No. 18]

A.  Standard of Judicial Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Chesser v. Berryhill, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)).  A court must consider "both evidence that supports and evidence that detracts from the ALJ's decision, [but it] may not reverse the decision merely because there is substantial evidence support[ing] a contrary outcome." Id. (quoting Prosch, 201 F.3d at 1012) (internal quotation marks omitted).

A court does not "reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determination are supported by good reasons and substantial evidence."  Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)).  Therefore, a court must affirm the ALJ's decision if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]"  Wright v. Colvin, 789 F.3d 847, 852 (8th Cir. 2015) (quoting Perkins v. Astrue, 648 F.3d 892, 897 (8th Cir. 2011)).

B.  Treating Psychiatrist's Opinion

Plaintiff argues that the ALJ erred in formulating her RFC because the RFC did not include all of the limitations that her psychiatrist Dr. Johnson identified and that the ALJ specifically found were supported by the record.  In particular, Plaintiff claims the ALJ's decision requires reversal because the ALJ credited Dr. Johnson's opinion that Plaintiff had moderate limitations in her ability to respond appropriately to changes in the work setting and maintain socially appropriate behavior, but she omitted these limitations from the RFC without explanation.  The Commissioner counters that the ALJ sufficiently accounted for those limitations in the RFC.

RFC is "the most [a claimant] can still do despite" his or her physical or mental limitations. 20 C.F.R. § 404.1545(a)(1).  See also Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ should determine a claimant's RFC based on all relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his limitations."  Moore, 572 F.3d at 523 (quotation omitted).

"Under the relevant regulations,[5] an ALJ must give a treating physician's opinion controlling weight if it is well-supported by medical evidence and not inconsistent with the substantial evidence in the record."  Lucus v. Saul, No. 18-3285, 2020 WL 2892228, at *2 (8th Cir. June 3, 2020).  If an ALJ declines to give controlling weight to a treating physician's opinion, the ALJ must consider the following factors in determining the appropriate weight: length and frequency of the treatment relationship; nature and extent of the treatment relationship; evidence

---

[5] For claims filed on or after March 27, 2017, the regulations have been amended to eliminate the treating physician rule. The new regulations provide that the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources," but rather, the SSA will consider all medical opinions according to several enumerated factors, the "most important" being supportability and consistency.  20 C.F.R. §§ 404.1520c, 416.920c.  Plaintiff filed her applications in 2015, so the previous regulations apply.

9

provided by the source in support of the opinion; consistency of the opinion with the record as a whole; and the source's level of specialization.  20 C.F.R. §§ 404.1527(c), 416.927(c).

Whether the ALJ grants a treating physician's opinion substantial or little weight, "[t]he regulations require that the ALJ 'always give good reasons' for the weight afforded to a treating physician's evaluation." Reed v. Barnhart, 399 F.3d 917, 921 (8th Cir. 2005) (quoting 20 C.F.R. § 404.1527(d)(2)).  Further, an ALJ must explain why an opinion from a medical source was not adopted. SSR 96–8p, 1996 WL 374184, at *7 (Soc. Sec. Admin. July 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

Dr. Johnson began providing Plaintiff therapy and medication management sometime before March 2014.  (Tr. 955)  Aside from a seven-month gap in treatment between June 2015 and January 2016[6], Dr. Johnson saw Plaintiff at least every three months for about three and a half years.  Dr. Johnson treated Plaintiff more frequently (sometimes several times per month) when Plaintiff's moods were less stable and she reported increased irritability, aggression, violent fantasies, hallucinations, and/or thoughts of death.  Dr. Johnson regularly changed and adjusted the dosages of Plaintiff's psychiatric medications, which included, at various times, Latuda, Haldol, Prozac, Saphris, Trazodone, and Topamax.

Dr. Johnson completed a mental medical source statement (MSS) for Plaintiff, stating that Plaintiff had an unspecified mood disorder and alcohol-induced psychotic disorder which would cause her to be off task "25% or more" of the workday and miss four days of work per month.  (Tr. 954)  Based on her clinical findings and Plaintiff's medical history, Dr. Johnson opined that Plaintiff was "markedly limited" in her ability to:  perform activities within a schedule and

---

[6] Plaintiff saw a nurse practitioner from Dr. Johnson's office twice in December 2015.

10

maintain attendance; work in coordination with or proximity to others; complete a normal workday and workweek; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers without distracting them or exhibiting behavioral extremes. (Tr. 955) Dr. Johnson stated that Plaintiff was "moderately limited" in her ability to: understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; interact appropriately with the general public; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and respond appropriately to changes in the workplace. (Id.)

In her decision, the ALJ discounted Dr. Johnson's assessment of Plaintiff's marked limitations, reasoning that "are not supported by Dr. Johnson's own treatment records nor are they supported by the record."[7] (Tr. 28) However, the ALJ found that Dr. Johnson's opinion that Plaintiff had moderate limitations "related to detailed instructions, maintain attention and concentration for extended periods, interacting appropriately with the public, maintaining socially appropriate behavior, and responding appropriately to changes in the work setting [was] supported by the record." (Tr. 28) The ALJ did not address Dr. Johnson's opinion that Plaintiff would be off task more than twenty-five percent of the workday and miss four days of work per month.

Plaintiff maintains that the ALJ erred in formulating her RFC because she expressly found that moderate limitations on Plaintiff's ability to respond appropriately to changes in the work setting and maintain socially appropriate behavior were supported by the record but failed to either

---

[7] The ALJ explained: "[T]he claimant interacts with her neighbor and attends medical appointments and makes frequent visits to the emergency room, which is not supportive of such severe limitations." (Tr. 28) The ALJ further discredited Dr. Johnson's opinion that Plaintiff would not be able to maintain attendance or be around others because Dr. Johnson did not explain "why claimant would be unable to maintain attendance given her history of attending medical appointments and emergency room and her overall ability to perform tasks related to the activities of daily life." (Tr. 28-29)

11

include those limitations in the RFC or explain her decision to omit them. After crediting those functional limitations, the ALJ "should have either included the limitations [s]he did not discount in h[er] RFC finding or provided a reason for not doing so." Elder v. Berryhill, No. 4:17-CV-873 DDN, 2018 WL 262832, at *6 (E.D. Mo. Jan. 2, 2018). See also Woods v. Astrue, 780 F.Supp.2d 904, 913 (E.D. Mo. 2011); Richardson v. Colvin, No. 5:16-06148-CV-RK, 2017 WL 6420283, at *2 (W.D. Mo. Dec. 18, 2017); Murphy v. Colvin, No. 1:15-CV-131-AGF, 2016 WL 4158868, at *7 (E.D. Mo. Aug. 5, 2016); Trotter v. Colvin, No. 3:15-CV-05013-NKL, 2015 WL 5785548, at *3 (W.D. Mo. Oct. 2, 2015). The ALJ's statement that the moderate limitations identified in Dr. Johnson's opinion were "supported by the record" required the ALJ to provide reasons for disregarding those limitations when determining the RFC.

The Commissioner asserts that the ALJ accounted for Plaintiff's limited ability to respond appropriately to changes in the work setting by finding that she could perform only simple, routine tasks but not at a fast pace. However, the Commissioner provides no authority for the proposition that a limitation to simple, routine, and unhurried tasks captures the "concrete consequences" of an inability to respond appropriately to changes in the workplace. Cf. Chismarich v. Berryhill, 888 F.3d 978, 980 (8th Cir. 2018) ("moderate" limitations in social functioning, activities of daily living, and concentration, persistence, and pace were not inconsistent with RFC for simple instructions and non-detailed tasks, casual and infrequent contact with others, no production quotas, and no regular contact with the public). An ALJ's failure to include in the RFC the plaintiff's adaptive limitations identified by a treating physician and accepted by the ALJ constitutes reversible error.[8] Gann v. Berryhill, 864 F.3d 947, 952-53 (8th Cir. 2017).

---

[8] The Commissioner also argues that the ALJ accounted for Plaintiff's inability to maintain socially appropriate behavior by including in the RFC a limitation to no more than occasional interaction

The ALJ's rejection without explanations elements of Dr. Johnson's opinion could be overlooked if her medical opinion were not supported by the record.  See Murphy, 2016 WL 4158868, at *7.  However, substantial evidence in the record, including Dr. Johnson's treatment notes and the treatment notes and MSS of Plaintiff's therapist, supported Dr. Johnson's opinion.

As previously discussed, Dr. Johnson treated Plaintiff regularly for over three years and variously diagnosed her with:  psychotic disorder NOS, alcohol use disorder, unspecified mood disorder, "alcohol induced psychotic disorder with mod [sic] use Disorder, with hallucinations," PTSD, and cluster B traits.  Dr. Johnson frequently changed and adjusted the dosages of Plaintiff's psychiatric medications, suggesting that Plaintiff's symptoms were not controlled.  Additionally, as the ALJ noted, Dr. Johnson documented several appointments at which Plaintiff acknowledged noncompliance with her medications.[9]  Dr. Johnson's treatment records reflect that, when Plaintiff was noncompliant with her medications, symptoms such as irritability, aggression, homicidal and suicidal ideation, violent fantasies, hallucinations, and panic attacks increased.  Such records supported Dr. Johnson's opinion relating to the severity of Plaintiff's impairments.

Dr. Johnson's opinion was also consistent with the progress notes and MSS of Plaintiff's therapist, Michael Hester, LPC.[10]  Mr. Hester counseled Plaintiff eleven times in 2016 and five

---

with co-workers and the public.  This is a closer question but one the Court will not address because the Court reverses and remands on the issue of adaptive limitations.

[9] The ALJ cited Plaintiff's medical noncompliance in support of her finding that Plaintiff's subjective symptoms were less disabling than alleged.  The Court notes, however, that the Eighth Circuit has recognized that "a mentally ill person's noncompliance with psychiatric medications can be, and usually is, the 'result of [the] mental impairment [itself] and, therefore, neither willful nor without a justifiable excuse.'"  Pate-Fires v. Astrue, 564 F.3d 935, 945 (8th Cir. 2009) (quotation omitted).

[10] "A therapist is not an 'acceptable medical source' to establish 'a medically determinable impairment.'"  Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005) (citing 20 C.F.R. §§ 404.1513(a), 416.913(a)).  However, a therapist's opinion may be used to determine "the severity of the claimant's impairment and the effect of the impairment on the claimant's ability to work."  Lacroix v. Barnhart, 465 F.3d 881, 887 (8th Cir. 2006).

times between January and August 2017. Mr. Hester's progress notes reflect that Plaintiff's symptoms waxed and waned. At some appointments, Plaintiff presented as depressed, anxious, agitated, tired and/or tearful, and at others she reported that her mood was "good" or "so-so." In May 2016, Mr. Hester completed a mental MSS for Plaintiff, stating that Plaintiff's mental impairments would cause her to be off task "25% or more" of the workday and miss four days of work per month. (Tr. 957-58). He opined that she was moderately, markedly, or extremely limited in nineteen of twenty areas of workplace mental functioning, including the ability to respond appropriately to changes in the work setting and maintain socially appropriate behavior. Mr. Hester's opinion was entirely consistent with that of Dr. Johnson.

Finally, Dr. Johnson's opinion was consistent with the evaluation of neuropsychologist Dr. Jordan, to whom Dr. Johnson referred Plaintiff for memory loss.[11] (Tr. 960-62) Dr. Jordan performed a psychiatric diagnostic interview and diagnosed Plaintiff with moderate somatization, severe anxiety with panic attacks, and severe depression.

In short, the record contains considerable evidence supporting Dr. Johnson's opinion that Plaintiff's mental impairments significantly affected her ability to adapt to changes in the work setting and maintain socially appropriate behavior. See, e.g., Murphy, 2016 WL 4158868, at *8. The record also supports Dr. Johnson's opinion that Plaintiff would be off task more than twenty-five percent of the workday and miss four days of work per month, limitations which the vocational expert testified would preclude competitive employment. Therefore, the ALJ should have

---

[11] Plaintiff declined to return to Dr. Jordan's office for cognitive testing after the diagnostic interview.

explained – and should explain on remand – why she ultimately disregarded significant portions of Dr. Johnson's opinion when formulating Plaintiff's RFC.[12]

## VI. Conclusion

For the reasons discussed above, the Court finds that substantial evidence in the record as a whole does not support the Commissioner's decision that Plaintiff was not disabled. Accordingly,

**IT IS HEREBY ORDERED** that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED**, and this cause is **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

An order of remand shall accompany this memorandum and order.

PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 15th day of June, 2020

---

[12] Because the ALJ erred in formulating and explaining the RFC determination, the Court does not address Plaintiff's claim that the ALJ improperly assessed the credibility of her subjective complaints.

15